383 A.2d 218

Alexander F. BARBIERI, Individually and Acting in his Official Capacity as the Court Administrator of Pennsylvania, Petitioner-Appellant,

v.

Milton J. SHAPP, Governor of the Commonwealth of Pennsylvania, C. Delores Tucker, Secretary of the Commonwealth of Pennsylvania, and Louis C. Mete, Commissioner of the Bureau of Elections, Commissions and Legislation for the Commonwealth of Pennsylvania, Respondents-Appellees.

Supreme Court of Pennsylvania.

Argued May 26, 1977.

Decided Feb. 3, 1978.

Jonathan Vipond, III, Eve L. Cutler, Philadelphia, for petitioner-appellant.

Melvin R. Shuster, Deputy Atty. Gen., Vincent X. Yakowicz, Sol. Gen., Harrisburg, for respondents-appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Judge.

Four common pleas judges reached mandatory retirement age in the summer and fall of 1977. Pa.Const. art. V, § 16(b). Appellees, the Governor, the Secretary of the Commonwealth, and the Commissioner of the Bureau of Elections, Commissions, and Legislation, did not list these judgeships for election at the November, 1977, municipal elections. The Election Code requires that all positions to be filled at the municipal election be listed by the thirteenth Tuesday before Primary Day.[1] This year the thirteenth Tuesday was February 15, 1977. On March 1, 1977, appellant, the Court Administrator of Pennsylvania, filed a petition for review in the Commonwealth Court, asking that appellees be required to list these judgeships for election.[2] Appellees responded that under Pa.Const. art. V, § 13(b), these judgeships should not be listed this year, but should be filled by gubernatorial appointment until the November, 1979, municipal election. The Commonwealth Court granted appellees' motion for judgment on the pleadings and dis-

1. Act of June 3, 1937, P.L. 1333, § 905, as amended, 25 P.S. § 2865 (1963 & Supp.1977).

2. Appellees argue that this delay constitutes laches. On the contrary, taking two weeks to bring a complex suit of some public importance is not undue delay.

missed the complaint. This appeal followed.[3] On October 26, 1977, this Court reversed the Commonwealth Court and ordered that the judgeships be listed for the November, 1977, municipal election, and noted that opinions would follow.[4] Mr. Justice Nix and Mr. Justice Manderino dissented from the order.

## I

Appellees initially argue that the Court Administrator has no standing to raise the issue herein. We do not agree.

■ The Court Administrator is a constitutional officer, Pa.Const. art. V, § 10, whose specific duties are detailed in the Rules of Judicial Administration, Rules 501 et seq. He is responsible for the "prompt and proper disposition of the business of all courts and justices of the peace." Rule 501. This duty gives him an interest in insuring that seats required to be filled by an election are in fact filled in that manner, so that courts and justices of the peace may promptly and properly dispose of litigation.

■ The Court Administrator disburses funds appropriated for the operation of the judicial system and maintains records of the qualifications and employment status of all persons in the judicial system. Rule 504. He is directly concerned with the constitutional qualification of judges to sit. Because he is responsible for disbursing both salaries and expense money to judges, he is responsible for ensuring that those who claim money as judges are constitutionally entitled to their positions. If appellant is placed in the position of paying funds to judges who have been selected for office improperly, he will suffer in his official capacity

3. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 203, 17 P.S. § 211.203 (Supp.1977).

4. Pursuant to this order, the Election Code, and the Pennsylvania Constitution, these four judicial vacancies were filled at the November, 1977 election. The new judges duly received their commissions, took their oaths of office and are now serving their constitutional ten year terms of office.

the most traditional kind of "substantial," "direct" and "immediate" harm, pecuniary loss to the judicial system. See generally *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 191, 221, 346 A.2d 269, 280, 295 (1975) (plurality opinion of Roberts, J., and concurring opinion of Eagen, J.).[5]

## II

The Pennsylvania Constitution establishes a system of elected judges. Pa.Const. art. V, § 13(a) & (b) provides:

"§ 13. Election of justices, judges and justices of the peace; vacancies

(a) Justices, judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve.

(b) A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor. If the vacancy occurs during the session of the Senate, the appointment shall be with the advice and consent of two-thirds of the members elected to the Senate, except in the case of justices of the peace which shall be by a majority. If the vacancy occurs during sine die adjournment of the Senate such appointment shall not require the advice and consent of the Senate. The person so appointed shall serve for an initial term ending on the first

---

5. Appellees contend that appellant does not make out a cause of action under the Declaratory Judgment Act, Act of June 18, 1923, P.L. 840, §§ 1 et seq., as amended, 12 P.S. §§ 831 et seq. (1953 & Supp.1977). Appellant's interest in this case, which is sufficient to give him standing, along with his allegation of injury to that interest, makes him concretely adverse to appellees as required by the Declaratory Judgment Act. Appellees claim that section 976 of the Election Code, 25 P.S. § 2936, which allows candidates for office to challenge the rejection of nominating petitions, constitutes a statutory remedy for this wrong, barring relief under the Declaratory Judgment Act, 12 P.S. § 836. This remedy, however, is open to disappointed judicial candidates only, and is not open to appellant. There is no other statute giving appellant any remedy for the specific wrong he alleges he is suffering, and therefore he makes out a cause of action under the Declaratory Judgment Act.

Monday of January following the next municipal election more than ten months after the vacancy occurs."

This Court has emphasized that this section reflects a strong "public policy in favor of having the citizens served by . . . elected [judges]." *Leedom v. Thomas,* 473 Pa. 195, 201, n. 5, 373 A.2d 1329, 1333 n. 5 (1977).

Thus, whenever possible, election is the constitutionally prescribed method for filling judgeships in Pennsylvania. The appointment procedure of section 13(b) is a stopgap to fill seats that unexpectedly fall vacant. As this Court said unanimously in *Berardocco v. Colden,* 469 Pa. 452, 459, 366 A.2d 574, 577 (1976) (footnote omitted):

"whenever possible, judicial officers shall be elected by a complete electoral process. The appointive process of section 13(b) was intended to fill a judicial vacancy only until the office could again be filled by a popularly elected officer. The 'ten month' provision was designed simply to insure that the electoral process would be complete with a regularly conducted primary election, as well as a municipal election."

We reaffirmed this doctrine in *Leedom v. Thomas,* supra, emphasizing that "section 13(b) . . . 'was not intended to frustrate the electoral process.'" 473 Pa. at 199, 373 A.2d at 1331–32. Thus, we must construe this constitutional provision so that its effect is consistent with the intent we have found it to express.

When a judge reaches mandatory retirement age less than ten months before a municipal election, or between Election and Inauguration Days, a regularly conducted election to fill the judge's seat may be held without waiting two years for the next municipal election. The judge's mandatory retirement date is as easily and as certainly known in advance as the date upon which the regular term of a nonretiring judge will expire. Potential candidates, election officials and the voting public have sufficient notice to prepare for the election, even though the judge has not yet retired at the time the election process begins. Delaying such an election two years plainly frustrates the intent of

the framers and of the People of the Commonwealth, who adopted section 13 intending that whenever possible judges are to be elected. We must therefore conclude that the "ten month" provision of section 13(b) does not apply where the end of a fixed term—expiration of the judge's elected term or attainment of mandatory retirement age—produces the vacancy.

Appellees argue that a literal reading of section 13(b) requires that whenever the Governor fills a judicial vacancy his appointee "shall serve for an initial term ending on the first Monday of January [Inauguration Day] following the next municipal election more than ten months after the vacancy occurs." However, as this Court held in *Berardocco v. Colden, supra,* and *Leedom v. Thomas, supra,* this clause cannot be read mechanically when to do so would distort the constitutional scheme requiring elected judges.

In *Berardocco,* a justice of the peace resigned less than ten months before the November, 1975, municipal election, which would have marked the end of his term. The Governor appointed respondent Colden to fill the vacancy. After the election, which relator Berardocco won, the Governor refused to issue Berardocco his commission. Colden remained in office, asserting that his constitutional term lasted until January, 1978, "following the next municipal election more than ten months after the vacancy occur[red]." This Court held that this provision did not apply where the normal election process had begun before the resignation, and reaffirmed this holding in *Leedom v. Thomas, supra.*[6] We construed the provision in light of the clear constitutional plan favoring election of judges. Vacancies are to be filled by appointment only when there is insufficient time to hold an election.

In *Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833 (1976), this Court held that the term of office, defined in

---

**6.** *Berardocco* and *Leedom* reject the result and the reasoning of *Rogers v. Tucker,* 443 Pa. 509, 279 A.2d 9 (1971) (plurality opinion). Thus appellees' reliance upon *Rogers* is misplaced.

Pa.Const. art. V, §§ 15 & 16,[7] of a judge who reaches mandatory retirement age ends when he reaches that age. It does not last until his seat would have been up for election had he been younger. In contrast, a judge under

7. "§ 15. Tenure of justices, judges and justices of the peace

(a) The regular term of office of justices and judges shall be ten years and the regular term of office for judges in the municipal court and traffic court in the City of Philadelphia and of justices of the peace shall be six years. The tenure of any justice or judge shall not be affected by changes in judicial districts or by reduction in the number of judges.

(b) A justice or judge elected under section thirteen (a), appointed under section thirteen (d) or retained under this section fifteen (b) may file a declaration of candidacy for retention election with the officer of the Commonwealth who under law shall have supervision over elections on or before the first Monday of January of the year preceding the year in which his term of office expires. If no declaration is filed, a vacancy shall exist upon the expiration of the term of office of such justice or judge, to be filled by election under section thirteen (a) or by appointment under section thirteen (d) if applicable. If a justice or judge files a declaration, his name shall be submitted to the electors without party designation, on a separate judicial ballot or in a separate column on voting machines, at the municipal election immediately preceding the expiration of the term of office of the justice or judge, to determine only the question whether he shall be retained in office. If a majority is against retention, a vacancy shall exist upon the expiration of his term of office, to be filled by appointment under section thirteen (b) or under section thirteen (d) if applicable. If a majority favors retention, the justice or judge shall serve for the regular term of office provided herein, unless sooner removed or retired. At the expiration of each term a justice or judge shall be eligible for retention as provided herein, subject only to the retirement provisions of this article.

§ 16. Compensation and retirement of justices, judges and justices of the peace

(a) Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth.

(b) Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years. Former and retired justices, judges and justices of the peace shall receive such compensation as shall be provided by law. No compensation shall be paid to any justice, judge or justice of the peace who is suspended or removed from office under section eighteen of this article or under article six.

(c) A former or retired justice or judge may, with his consent, be assigned by the Supreme Court on temporary judicial service as may be prescribed by rule of the Supreme Court."

mandatory retirement age who resigns his office could be said to leave before the end of his term, not at the time his term expires. Under *Berardocco v. Colden,* and *Leedom v. Thomas,* the ten month rule of section 13(b) applies only to vacancies caused when a judge below retirement age leaves office before the end of his term. When he leaves office because his term ends—either by the passage of the constitutionally prescribed period between elections or by the attainment of the constitutionally prescribed retirement age—a new judge is to be elected for a new term, not appointed to fill out a "term" which has already expired.

The result we reach here implements the overall constitutional plan providing for an elected judiciary. Any other result would allow a narrow, technical construction of a single clause, the last sentence of section 13(b), which was designed to be effective in different circumstances, to frustrate the intent of the framers who drafted and the voters who approved the entire Judiciary Article of the Constitution.

Accordingly, on October 26, 1977, we issued the following:

ORDER

FILED: October 26, 1977

PER CURIAM

The judicial terms of office of Judge Alexander F. Barbieri (Court of Common Pleas of Philadelphia, First Judicial District), Judge Lawrence A. Monroe (Court of Common Pleas of Bucks County, Seventh Judicial District), Judge J. Quint Salmon (Court of Common Pleas of Beaver County, Thirty-sixth Judicial District), and Judge Albert H. Heimbach (Court of Common Pleas of Carbon County, Fifty-sixth Judicial District) having expired during the calendar year 1977 by reason of the mandatory retirement provision of Article V, Section 16(b), of the Constitution of Pennsylvania,

It is hereby ordered and directed that each of the above judicial offices be filled by election at the November 8, 1977, municipal election;

It is further ordered and directed that the Secretary of the Commonwealth give notice forthwith to the County Boards of Elections in the respective judicial districts, the Chairmen of the political parties in each of the above judicial districts, and all other persons entitled to notice under the Election Code, that the designated judicial offices shall be listed for election on the November 8, 1977, ballot and that nomination certificates shall be received and treated as timely filed;

It is further ordered and directed that appellees-respondents and the designated Boards of Elections do and perform any and all other acts necessary or proper in order that the foregoing judicial offices may be filled at the November 8, 1977, municipal election.

The order of the Commonwealth Court is reversed. Opinions to follow.

Mr. Justice Nix and Mr. Justice Manderino dissent."

MANDERINO, J., filed a dissenting opinion in which NIX, J., joined.

MANDERINO, Justice, dissenting.

While I agree that the Court Administrator has standing to raise the issue presented here, I cannot agree that these four judgeships should be filled by the elective process rather than by appointment. Section 13 reads as follows:

"§ 13. Election of justices, judges and justices of the peace, vacancies.

(a) Justices, judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve.

(b) A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor. The appointment shall be with the advice and consent of two-thirds of the members elected to the Senate, except in the case of justices of the peace which shall be by a majority. The person so appointed shall serve for an

initial term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs." Pa.Const. art. V, § 13(a) & (b).

Appellant admits that Section 13(b) applies when a vacancy occurs due to an "unforeseen circumstance," such as the death of the office holder, voluntary retirement, or removal. Appellant argues, however, that when a vacancy can be foreseen "with certainty," as is allegedly the case with mandatory retirement at age 70, Section 13(b) does not apply. Appellant would have us read Section 13(b) to say that some vacancies are to be filled pursuant to Section 13(b), but that other vacancies are not to be filled under Section 13(b). In effect, appellant asks us to read into Section 13(b) an exception which is neither explicit nor implicit in the language of Section 13(b). Well settled principles of constitutional interpretation counsel against the reading urged by appellant:

"We turn then to the Constitution. Where in the Constitution 'the words are plain  *  *  *  [they] must be given their common or popular meaning, for in that sense the voters are assumed to have understood them when they adopted the constitution. (citation omitted.)' " *Breslow Twp. Sch. Dist.*, 408 Pa. 121, 125, 182 A.2d 501, 504 (1962). "A constitutional provision is to be interpreted insofar as possible in terms of its spirit and intention—*Commonwealth ex rel. Attorney General v. Beamish*, 309 Pa. 510, 514, 164 A. 615 (1932)—and in its popular sense and as understood by the people who adopted it—*Goodwin v. Allegheny County*, 182 Pa.Super. 28, 31, 125 A.2d 640 (1956). Our ultimate touchstone, nevertheless, must remain the language of the Constitution itself." *Firing v. Kephart*, 466 Pa. 560, 565, 353 A.2d 833, 835–36 (1976).

The word "vacancy," as used in Section 13(b) applies equally to vacancies which result when an incumbent dies, resigns, *retires*, or is removed from office. *See e. g., Berardocco v. Colden*, 469 Pa. 452, 366 A.2d 574 (1976); *Firing v. Kephart*, 466 Pa. 560, 353 A.2d 833 (1976). Furthermore, in *Firing*, this Court refused to distinguish mandatory retire-

ment from voluntary retirement, when determining whether a vacancy existed under Section 13(b). We noted there that the framers of Art. V, § 13, believed that death, resignation, involuntary removal from office, *and* mandatory retirement, would "cause a vacancy to occur . . . and thus enable the governor to appoint a successor for a new 'initial term' as defined in Section 13(b)." 466 Pa. at 567, 353 A.2d at 836.

This view previously espoused by our Court is the same as that expressed by one of the delegates on the floor of the Constitutional Convention. No other contrary comments were made at any time during the convention. The delegate commented:

"I think the facts should not be debatable in any way that when a judge dies a vacancy occurs, when a judge resigns, a vacancy occurs, *and when he has retired,* . . . the vacancy occurs as of a given day."

Debates of the Constitutional Convention of 1967–68, Vol. II, at 1085–86 (remarks of Delegate Barron) (emphasis added).

Appellant relies heavily on our decision in *Berardocco v. Colden,* 469 Pa. 452, 366 A.2d 574 (1976). In *Berardocco,* however, this Court held that a vacancy was not to be filled under Section 13(b) because the normal election process contemplated by Section 13(a) had begun *before* the vacancy occurred.

Section 13 addresses itself to the question of whether the elective process or appointive process shall operate. It establishes two mutually exclusive methods of selecting judges: election under § 13(a), and appointment under § 13(b). Section 13(a) comes into operation when the term of office is to expire in the normal manner whether that term of office is an elected term or an appointed term. The method of succession involved in *Berardocco*—the normal expiration of a regular term, preceded by a primary and election in the "municipal election next preceding"—is precisely the situation to which Section 13(a) addresses itself. *Berardocco* refused to interpret § 13(b) in a manner that

would cause it to interfere with the operation of Section 13(a).

In *Berardocco* the regular term of an incumbent judicial officer was due° to expire, and the regular election process for this position had been duly initiated, when the judge retired prior to completion of his regular term. At that point, Section 13(a) had already become operative. Once the normal election process of 13(a) had been triggered, this Court deemed it too late to invoke Section 13(b) even though the vacancy had occurred less than ten months prior to the next municipal election.

In the case at bar, however, Section 13(a)'s election process had not been triggered by the anticipated end of a regular term. None of the four judges was serving a term which would naturally expire on the first Monday of January as was the case in *Berardocco*. The fact that the retirement date may be calculated with certainty does not change the character of the opening thereby created. It remains a *vacancy* to be filled pursuant to Section 13(b).

Appellant's reliance on this Court's discussion of the word "term" in *Firing v. Kephart*, 466 Pa. 560, 353 A.2d 833 (1976), also misconceives the constitutional issue before us. In *Firing* we observed that the word "term" has no fixed meaning, but that its meaning must be determined by reference to the applicable constitutional scheme. *Id.* at 565–66, 353 A.2d at 836. Appellant argues that when a judge reaches seventy, his "term" ends, in the same manner as does the term of a younger judge who completes ten years of service.

*Firing* simply does not call for the result sought by the appellant. Because a mandatorily retired judge's term ends at age seventy does not mean that a regular elective term under Section 13(a) then begins—it does mean, however, that a regular appointive term, under Section 13(b) commences. The majority's adoption of appellant's argument frustrates the intent of Section 13, that judges' terms begin on the first Monday of January following a municipal elec-

tion year, each term being preceded by *either* a regular elective term or a regular appointed term.

I recognize, as this Court did in *Firing*, that the word "term" has no fixed or absolute meaning, and that its meaning in a particular instance can only be determined by reference to the applicable constitutional or statutory scheme. As established in that case, the *term of an incumbent* expires upon retirement, thereby creating a vacancy in the *regular term of the office*. This does not mean, of course, that the *term of the office* expires upon retirement. The length of a regularly elected term, or of a regularly appointed term, attaches to the office itself—it is not a condition personal to the office holder. The *regular term* expires by operation of law; the holder's retirement, however, creates a vacancy.

Adopting appellant's view, which necessarily applies to all vacancies that are foreseeable, may lead to absurd results. For example, because 1977 is a "municipal election" year, and because the next "municipal election" year does not occur until 1979, (1978 being a "general election" year) *see* Pa.Const. Art. 7, Sections 2 and 3, all "vacancies" that are certain to occur between now and ten months before the municipal election in 1979 are to be filled at the "next preceding municipal election." Elections would have to be held in 1977, not only for foreseeable vacancies which will occur during 1978, but also for those which will occur in 1979 more than ten months prior to the municipal election of that year. An election will have to be held in 1977 for all judicial offices wherein the incumbent would be mandatorily retired up until ten months before the municipal election in 1979. For example, if one were to reach mandatory retirement age on January 1 of 1979, or in July of 1978, or February 1978, the "next preceding municipal election" would be the municipal election of 1977, just as is the case for mandatory retirements occurring in 1977. The absurdity of this interpretation is obvious: at the municipal election in 1977, the people will be electing judges some of whom will take office in 1978, some of whom will of necessity have to wait until as

late as 1979 to take office. Such a result simply could not have been intended.

Unless the Governor's appointment power is totally eliminated in a situation of mandatory retirement, any appointment would be for a period of time *less than* that *prescribed* by our Constitution. This cannot be the result intended by the framers of our Constitution. On the contrary, as we noted in *Berardocco, supra* :

> "The framers of the Judiciary Article recognized, however, that in order to insure an efficient court system the vacancy which results when an elected incumbent dies, resigns, retires, or is removed *should not remain unfilled* until a new judicial officer could be duly elected." (Emphasis added.)

366 A.2d at 576.

If the Governor is to fill the vacancy by appointment, such an appointment *must* comply with the requirements of our Constitution—an appointment for an initial term ending on the first Monday of January following the next municipal election *more than ten months after the vacancy occurs.*

Under the result of the majority some appointments by the Governor would be for less than ten months. Appointments could range from a period of one day to ten months. Appointments for short periods will be difficult to fill and some judicial offices will remain vacant because of the difficulty of finding appointees. Appointments for less than ten months were not contemplated when the Constitution was written.

The importance of the initial term was also discussed in the Pennsylvania Constitutional Convention during which Delegate Ruth observed:

> "I have supplied 10 months instead of three or more months, the reason being that in the judiciary this was discussed rather thoroughly—at least, this area—that any appointive judge should at least be on the bench 10 months and should run in a primary election in addition to the general election. If he only had to serve 3 months on

the bench, he could get in in July and then run in the general election."

*Debates*, Vol. II, at 1014.

The majority has in effect rewritten Section 13. The exception which the majority has carved out of Section 13(b), when there has been no election machinery triggered under Section 13(a), is one which is not in accord with the constitutional scheme for the election and appointment of judges provided by Section 13.

If the governor's appointment power is totally eliminated when a retirement vacancy occurs, other untoward consequences could flow from today's decision. Although the majority is silent on the matter, if the elected judge is to assume office immediately upon the occurrence of the retirement vacancy, judges could be commencing their terms on any day of the year. If a retirement vacancy occurred, for example, on February 1, would the elected judge, elected in the preceding municipal year, commence his term on February 2? If he did, he would also finish his term in February since under the Constitution the elected term is ten years. Eventually, we could have terms commencing on every day of the 365-day year rather than on the first Monday of January. *See* art. V, § 13(b), § 13(e). *See also* 17 P.S. § 9 (1962). If, on the other hand, a judge elected at the preceding municipal election is not to begin his term until the first Monday in January, there will be a hiatus during which either the judicial office will remain unfilled or an appointed term less than that provided for in section 13(b) will occur. A person elected might have to continue practicing law for a period of time which could be more than a year after being elected a judge. Such a situation would not be a desirable one. *See Reed v. Sloan*, 475 Pa. 570, 381 A.2d 421 (filed December 1, 1977).

To conclude that the four judicial vacancies should not be subject to the electoral process at this time is not to restrict the right of the people to elect judges of their choice. As this Court stated in *Rogers v. Tucker*, 443 Pa. 509, 517, 279 A.2d 9, 14 (1971):

"We do not deny the right of the people to elect a Judge of their choice, we merely fixed, in accordance with the Constitution, *the time of election when the people shall exercise their choice.*" (Emphasis added.)
443 Pa. at 517, 279 A.2d at 14.

Filling the vacancies before us under Section 13(b) does not undermine the election rights of the people; the appointment is only for the "initial term"—regular appointed term—of Section 13(b), after which the office would be filled by the elective process of Section 13(a). The majority's result, premised on the view that the Election Code favors elected officials over appointed ones, ignores the unambiguous provisions of Section 13(b) and consequently perverts the constitutional scheme for filling judicial vacancies. I respectfully dissent.

NIX, J., joins in this dissenting opinion.