623 A.2d 372

George M. TROUT, Commissioner, Robert A. Minnich, Commissioner, Newton D. Brown, Commissioner, York County Board of Elections, Petitioners,

v.

Robert P. CASEY, Governor, Commonwealth of Pennsylvania; Brenda K. Mitchell, Secretary of the Commonwealth.

Commonwealth Court of Pennsylvania.

Heard March 3, 1993.

Decided March 5, 1993.

Publication Ordered March 23, 1993.

68

Samuel F. Meisenhelder and Edward R. LeCates, for petitioners.

Greg E. Dunlap, for respondents.

## ORDER

NOW, March 4, 1993, upon consideration of the motions for summary relief filed by the petitioners and respondents in the above-captioned matter, it is ORDERED that the petitioners' motion for summary relief is denied, the respondents' motion is granted, and judgment is entered in favor of respondents, the Governor and Secretary of the Commonwealth. An opinion supporting this order will follow.

## ADJUDICATION

CRAIG, President Judge.

This adjudication is filed in support of order entered March 4, 1993, pursuant to a hearing on the petitioners' and respondents' motions for summary relief, in this original jurisdiction proceeding commenced by the Commissioners' and the Board of Elections' petition for review seeking a mandamus order and a declaratory judgment.

This matter involves the question of whether two district justice positions in newly created magisterial districts in York

County—subject to being now filled initially by gubernatorial appointment—should also be placed on the ballot in this year 1993, so that the elective terms of those two offices would begin at the start of 1994.

## FINDINGS OF FACT.

1. The Petitioner, The York County Board of Elections, is comprised of the following petitioner commissioners: George M. Trout, Robert A. Minnich and Newton D. Brown.

2. The Respondent, Robert P. Casey, is the Governor of the Commonwealth of Pennsylvania.

3. The Respondent, Brenda K. Mitchell, is the Secretary of the Commonwealth.

4. The Pennsylvania Supreme Court, acting upon a petition filed by the President Judge of York County, issued an order on May 19, 1992, that reestablished certain magisterial districts in York County, realigned two magisterial districts in the City of York in York County and created two new magisterial districts in the City of York, Districts Nos. 19–1–4 and 19–1–5. That order became effective on January 4, 1993. (Petitioners' Exhibit A.)

5. In 1993, the municipal general election will be held on November 2.

6. In 1993, the municipal primary election will be held on May 18.

7. On November 19, 1974, the Pennsylvania Supreme Court issued an order (1) directing the Court Administrator of Pennsylvania to certify to the Secretary of the Commonwealth on or before the 15th Tuesday before the primary election in every odd-numbered year, any information that is necessary to specify the magisterial districts for which district justices will be elected in that year's municipal election and (2) stating that Supreme Court orders establishing or modifying magisterial districts, if "entered" *after* the 19th Tuesday before the primary election in odd-numbered years, will *not* affect the number and boundaries of magisterial districts the Administrator certifies to the Secretary of the Commonwealth for

election purposes in that year, unless the Supreme Court expressly orders otherwise. (Petitioners' Exhibit B, also found at note to 25 P.S. § 2865.)

8. In 1993, the fifteenth Tuesday before this year's primary election is February 2.

9. In 1993, the nineteenth Tuesday before this year's primary election is January 5.

10. In 1993, the thirteenth Tuesday before this year's primary election is February 16.

11. On February 16, 1993, the Secretary of the Commonwealth certified to the York County Board of Elections fourteen of the eighteen magisterial districts within York County for which candidates are to be nominated. (Petitioners' Exhibit C.)

12. Two of the four districts that were, in the 1993 primary, not designated as positions for which candidates are to be nominated are the newly created Magisterial Districts Nos. 19–1–4 and 19–1–5.

13. No persons currently fulfill the duties of District Justice in either Magisterial District No. 19–1–4 or No. 19–1–5.

## DISCUSSION

Under Article V, section 13(b) of the Pennsylvania Constitution, "[a] vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor ... with the advice and consent of" a majority of the Senate. A person whom the Governor appoints serves by appointment only

> "for a term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs or for the remainder of the term whichever is less...."

In this case, the new magisterial districts did not come into existence until January 4, 1993, the effective date of the Supreme Court's order. Section 13(b) of Article V, as quoted above, indicates that appointive terms must end on the first Monday following the next municipal election more than ten

months after the vacancy occurs. In this year, under Pennsylvania Constitution, Article VII, section 3, the municipal election will be held on November 2. Thus, under section 13(b) the next municipal election that will occur more than ten months after these vacancies came into being will be the municipal election in 1995. The only vacancies (for which appointments have or will be made) that may be filled by election this year must have been in existence on a date at least ten months before this year's November 2 general municipal election, which in this case was January 2, 1993.

Thus, the pivotal issue in this case is whether the provision in section 13(b) for filling vacancies applies to the new district magistrate positions created by the Supreme Court's order. Initially, this court must conclude that the term "vacancy," as used in section 13(b), includes newly created district magistrate positions, as well as positions that have become open because of resignation, death or other causes. A newly-created position, not filled by any officeholder, is necessarily a vacant position, i.e., a vacancy.

In *Rogers v. Tucker*, 443 Pa. 509, 279 A.2d 9 (1971) the Pennsylvania Supreme Court considered the question of when an election should be held to fill a vacancy on the Commonwealth Court, caused by the resignation of one judge, where the vacancy occurred on January 4, 1971 and the municipal election was to be held on November 2, 1971—thus involving dates like those in this case.

The vacancy at issue in *Rogers* was created when the late Judge Alexander Barbieri resigned his position as a judge of Commonwealth Court as of January 4, 1971. On that same date, the Governor appointed Judge Theodore Rogers to fill the vacancy Judge Barbieri's resignation created. Judge Rogers and others filed an action in equity against the Secretary of the Commonwealth and an action in mandamus against the Dauphin County Board of Elections seeking to terminate certain actions which those officials had taken to place the position on the ballot in the 1971 municipal elections, which

would have caused the appointive term to end and the elective term to begin at the start of 1972.

Thus, the court in *Rogers* held that persons appointed to vacant judicial positions shall serve an appointive term running to the first Monday of January following the next municipal election more than ten months after the vacancy came into existence. The court held that the Commonwealth Court position, filled by appointment in 1971, could not be on the ballot until 1973, thus having the elective term begin in 1974.

The constitutional mandate for filling vacancies relied upon in that case controls this one. Under Article V, section 13(b), appointive terms shall last until the "first Monday of January following the next municipal election more than ten months after the vacancy occurs."

In this case, following *Rogers* as an exact analogy, the next municipal election which comes *more* than ten months after the January 4, 1993 occurrence of the vacancies is the municipal election in 1995, because the date the vacancies at issue came into being did *not* occur more than ten months before this year's upcoming municipal election on November 2, 1993.

Hence, in a parallel to *Rogers,* the appointive term here must run through 1993, 1994 and 1995, so that, pursuant to the 1995 municipal election, the elected term will commence at the start of 1996.

In *Sprague v. Casey,* 520 Pa. 38, 52–3, 550 A.2d 184, 191 (1988), the Supreme Court, citing Article V, section 13(b) noted the mandatory nature of that provision:

This provision does not confer discretion in the Governor as to whether this power of appointment should be used to fill the vacancy or the term for which that appointment should extend. The language of Article V, section 13(b) providing that the vacancy "*shall* be filled by appointment by the Governor" [emphasis is original] leaves no discretion in that officer as to how he is to proceed once the vacancy during the term of office occurs. Similarly, the language directing that "[t]he person so appointed shall serve for a term ending on the first Monday of January following the next municipal

election no more than ten months after the vacancy occurs ..." is explicit as to *when the interim term must end and the succeeding elective term begins.* (Emphasis added.) 520 Pa. at 52–3, 550 A.2d at 191.

■ As Chief Justice Nix noted in *Sprague,* although the Constitution makes clear the preference for the election of judges over the appointment of judges, the courts are bound by the constitutional mandate of Article V, section 13(b), even where the interpretation would result in a longer appointed tenure period.

The Commonwealth also relies upon a provision of the Judicial Code, 42 Pa.C.S. § 3135, which states that

Whenever the number of judges of a court is increased by *statute,* the additional judicial positions thereby created shall be deemed to be vacancies occurring on the effective date of the statute, and shall be filled in the manner and for the term provided in this chapter for other vacancies on such court. (Emphasis added.)

Of course, the new magisterial districts at issue here were directly created by Supreme Court order, rather than directed by a specific statute. The Supreme Court entered the order creating the new districts under the authority of Article V, section 7(b), which provides as follows:

The General Assembly shall establish classes of magisterial districts solely on the basis of population and population density and shall fix the salaries to be paid justices of the peace in each class. The number and boundaries of magisterial districts of each class within each judicial district shall be established by the Supreme Court....[1]

■ We note that, based upon the above-quoted constitutional provision, the Supreme Court's authority to establish the number and boundaries of magisterial districts must be based upon some legislative directive; however, the parties

1. Based upon the grant of power to the General Assembly to establish classes of and salaries for magisterial districts, presumably the Supreme Court's authority to establish the number and boundaries of magisterial districts is derived from some statutory directive; however, the parties have not indicated such a possible legislative act.

have made no suggestion as to what legislative act, if any, enabled the Supreme Court action in this case.

Nevertheless, our conclusion above, that the reference in section 13(b) to "vacancies" includes new positions created by the Supreme Court order, makes the Commonwealth's reliance on that statutory provision unnecessary.

■ Another Supreme Court order, dated November 19, 1974, states that orders *entered* after the nineteenth Tuesday before the primary, which in this case would be January 5, shall *not* affect the number of magisterial district positions for which elections should be held in the municipal election of the same year. The county petitioners contend that the terms of that order, by negative implication, indicate that the order in this case, effective January 4, *before* January 5 (and literally "entered" months before that), therefore should require certification of the new positions to the 1993 ballot. However, based on our conclusion above, that the term "vacancy" in section 13(b) of Article V of the Constitution includes these newly created positions, no Supreme Court order could override the constitutional mandates of that provision.

The Commonwealth also argues that the absence of an election directive by the Supreme Court in its May 19, 1992 order supports the conclusion that a 1993 election was not intended by the Supreme Court. The Commonwealth offered as an example yet another Supreme Court order creating new magisterial districts in Delaware County dated February 1, 1993, in which the Court did order placement of those positions on the ballot in 1993. (Respondents' Exhibit 1) However, that order did not match the one in this case. In the February 1, 1993 order, the Supreme Court, through realignment of existing districts, created two new magisterial districts, but made them effective only as of January 2, 1994. The Supreme Court thereby precluded the existence of any appointive term and consequently required that the positions necessarily had to be filled, at their outset, by election in this municipal election year.

## CONCLUSION

The Supreme Court's order establishing the new magisterial districts in York County did not become effective until January 4, 1993. Under Article V, section 13(b) of the Pennsylvania Constitution, in order for those vacancies to be placed on the election ballot for the municipal election in 1993, the vacancies had to come into being by January 2, 1993. Because, as indicated above, the vacancies did not occur until two days after that date, the vacant positions are to be filled by gubernatorial appointment, with the approval of a majority of the Senate, and the appointive terms will run through 1993, 1994 and 1995 because the elective terms, beginning at the start of 1996, cannot be subject to municipal election until 1995.