366 A.2d 574

**Albert J. BERARDOCCO, Relator,**

**v.**

**Richard COLDEN, Jr., Respondent.**

Supreme Court of Pennsylvania.
Argued March 30, 1976.
Decided July 6, 1976.
Rehearing Denied Aug. 17, 1976.

Kassab, Cherry & Archbold, Carmen P. Belefonte, Media, for relator.

Cecil Maidman, Deputy Atty. Gen., Robert P. Kane, Atty. Gen., Lawrence Silver, Deputy Atty. Gen., Chief, Civil Litigation, Melvin R. Shuster, Deputy Atty. Gen., for respondent.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This action in quo warranto was commenced on January 5, 1976, by relator, Albert J. Berardocco, invoking the original jurisdiction of the Supreme Court.[1] Relator contends that he was duly elected to the office of district justice of the peace for magisterial district 32–1–17 in Delaware County on November 5, 1975, and that he has been wrongfully denied his public office. Respondent, Richard Colden, Jr., contends that the election is of no effect because he was appointed by the Governor to the office in question for a term extending until January 1978. We hold that the appointment did not terminate the election process, and that relator was properly elected for a six-year term commencing January 5, 1976.

1. Section 201(3) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 201(3), 17 P.S. § 211.-201(3) (Supp.1975) provides:
    "The Supreme Court shall have original but not exclusive jurisdiction of:
    . . . (3) All cases of quo warranto as to any officer of statewide jurisdiction."
    A district justice of the peace is an "officer of statewide jurisdiction." *Collins v. Gessler*, 452 Pa. 471, 307 A.2d 892 (1973).

The facts are not in dispute. Prior to March 10, 1975, Frank T. Hazel was the duly elected district justice of the peace. His term of office was to expire January 5, 1976. As a consequence of this expiration date, and without regard to any vacancy in the office, the process of electing a district justice of the peace was set in motion on February 18, 1975.[2] By letter of that date, the Secretary of the Commonwealth notified the Delaware County Board of Elections that the office was to be filled at the November 5, 1975, municipal election and that each eligible party was to select its nominee at the May 20, 1975, primary election. On or about March 5, 1975, relator filed the necessary petitions to become a candidate for the office in question on both the Republican and Democratic primary ballots. On March 10, 1975, respondent also cross-filed nominating petitions for that office. On the same day, March 10, 1975, Frank T. Hazel, the incumbent, resigned his commission.

On or about April 14, 1975, during the course of the primary campaign, the Governor nominated respondent for the office of district justice of the peace for a term ending on the first Monday of January 1978. The Governor forwarded the nomination to the Senate for confir-

2. The process of election, in which both relator and respondent participated fully, involves, as set forth in the Election Code, inter alia: (1) sending, no later than February 18, 1975, written notice from the Secretary of the Commonwealth to the County Boards of Elections designating offices for which candidates are to be nominated at the municipal primary; (2) publication by the County Board of Elections of a primary election proclamation; (3) filing, on or before March 11, 1975, nomination petitions in the office of the County Board of Elections; (4) holding, on May 20, 1975, the primary elections; (5) certification of the municipal primary results to the Secretary of the Commonwealth by the County Board of Elections; (6) publication by the County Board of Elections, on October 25, 1975, of a general election proclamation; (7) holding the election on November 4, 1975; and (8) certification of the election results to the Secretary of the Commonwealth no later than November 24, 1975. Respondent does not assert any irregularity in these or any of the other steps which comprise the election process.

mation. The primary election was held, resulting in the nomination of relator as the Republican Party candidate and of respondent as the Democratic Party candidate. On June 2, 1975, the Senate confirmed the appointment, and on June 24, 1975, respondent assumed the office of district justice of the peace. On June 24, 1975, relator filed a complaint in quo warranto in the Supreme Court, seeking to have the appointment of respondent declared invalid. On September 25, 1975, we filed a per curiam order dismissing the complaint without prejudice on the ground that it was premature.

On November 5, 1975, the municipal election was held, and relator was elected to the office of district justice of the peace for a six-year term beginning on January 5, 1976. Relator instituted this action because the Governor would not issue his commission even though the certified election returns declared him the winner.

Sections 13(a) and 13(b) of article V (hereinafter the "Judiciary Article") of the Pennsylvania Constitution provided: [3]

"(a) Justices, judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve.

(b) A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor. If the vacancy occurs during the session of the Senate, the appointment shall be with the advice and consent of two-thirds of the members elected to the Senate, except in the case of justices of the peace which shall be by a majority. If the vacancy occurs during sine die and adjournment of the Senate such

---

3. On May 20, 1975, certain amendments to the Pennsylvania Constitution regarding judicial appointments were adopted. However, the amendments are not relevant to this case.

appointment shall not require the advice and consent of the Senate. The person so appointed shall serve for an initial term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs."

The question presented is whether the "ten month" provision of section 13(b) operates when the normal electoral process of judicial selection, as provided in section 13(a), has been triggered by the anticipated expiration of the incumbent's term. We hold that it does not.

The issue whether Pennsylvania judiciary should be selected by election or by appointment was resolved by the citizens of the Commonwealth in favor of an elected judiciary.[4] Section 13(a) of the Judiciary Article unambiguously requires that judicial offices in Pennsylvania be filled by persons who are elected and that they "be elected at the municipal election next preceding the commencement of their respective terms." The framers of the Judiciary Article recognized, however, that in order to ensure an efficient court system the vacancy which results when an elected incumbent dies, resigns, retires, or is removed should not remain unfilled until a new judicial officer could be duly elected.

Accordingly, section 13(b) provides that an appointed judicial officer may serve until such time as the office can be filled by election. The framers of section 13 also determined that the election process requires a ten-month period to allow candidates and election officials ample time to prepare for both primary and municipal elections. Thus, section 13(b) provides:

"The person so appointed shall serve for an initial term ending on the first Monday of January following

---

4. In the primary election of 1969, the electors of Pennsylvania rejected the option of having an appointed judiciary which was presented to them by section 13(d) of Article V of the Pennsylvania Constitution.

the next municipal election more than ten months after the vacancy occurs." [5]

Respondent contends that the "ten month" provision applies not only to those situations in which there is insufficient time to conduct the full election process, but also to instances in which the regular election process mandated in section 13(a) has already been commenced prior to the occurrence of the judicial vacancy. We disagree. Such a construction would seriously distort the constitutional scheme embodied in section 13 because it would allow the election machinery to be halted a few days or weeks prior to the municipal election. An incumbent, sensing defeat in the upcoming municipal election, could resign just prior to the municipal election, could be appointed to fill the vacancy for a term "ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs," and could, thus, avoid facing the voters for two more years. Indeed, respondent's interpretation, if carried to its logical extreme, would allow an incumbent, after losing an election but before expiration of his term, to resign and be appointed, thereby voiding an already completed election. Thus, respondent's reading of section 13(b) would ignore the mandate found in section 13(a). Such was certainly not the intention of the framers of the Judiciary Article nor of the voters who adopted it.

The Constitution must be interpreted in its popular sense as understood by the voters who adopted it, *Breslow v. Baldwin Township School District*, 408 Pa. 121, 182 A.2d 501 (1962); *Commonwealth ex rel. Reinhardt v. Randall*, 356 Pa. 302, 51 A.2d 751 (1947); *Brer-*

5. Section 13(c) of Article V of the Pennsylvania Constitution provides in pertinent part:
   " . . . [I]n the case of a vacancy occurring at the expiration of an appointive term under section thirteen (b), the vacancy shall be filled by election as provided in section thirteen (a)."

*eton's Estate*, 355 Pa. 45, 48 A.2d 868 (1946). Moreover, related provisions of the Constitution must be read in connection with one another so as properly to ascertain their meaning, *Weiss v. Ziegler*, 327 Pa. 100, 193 A. 642 (1937).

■■ The purpose of section 13 is to ensure that whenever possible judicial officers shall be elected by a complete electoral process. The appointive process of section 13(b) was intended to fill a judicial vacancy only until the office could again be filled by a popularly elected officer. The "ten month" provision was designed simply to insure that the electoral process would be complete with a regularly conducted primary election, as well as a municipal election.[6] It was not intended to frustrate the electoral process mandated in section 13(a). Accordingly, we hold that, consistent with section 13(a), the "ten month" provision of section 13(b) does not apply when, as here, the normal election process for judicial office has commenced, even if the vacancy occurs less than ten months prior to the next election. In that event the appointment may be only for a term equivalent to what would have been the remainder of the previous term.

Respondent's term ended on January 5, 1976, and relator was lawfully elected to the office of district justice of the peace for magisterial district 32–1–17 for a six-year term which commenced on January 5, 1976.[7]

Respondent's motion to quash is dismissed. The writ of quo warranto is granted: respondent removed from office and relator is hereby declared entitled to the office to which he was elected.

---

**6.** Prior to the adoption of section 13(b), the relevant time period was three months. This meant that a judicial officer appointed to fill a vacancy a few months before a municipal election, could be elected for a full term in the municipal election without having been selected by the voters of his or her party in a primary election. See section 25 of Article V of the Pennsylvania Constitution of 1874.

**7.** We need not reach the other issues raised by relator.