493 A.2d 687

**Ricardo C. JACKSON, Petitioner,**

v.

**William R. DAVIS, Secretary of the Commonwealth of
Pennsylvania, Respondent.**

Supreme Court of Pennsylvania.

Argued March 7, 1985.

Decided June 6, 1985.

Michael J. Stack, Jr., Stack & Gallagher, Stephen P. Gallagher, Philadelphia, for petitioner.

William R. Davis, Secretary of the Commonwealth, Mollie A. McCurdy, Harrisburg, for respondent.

Before LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

Petitioner is a judge of the Court of Common Pleas of Philadelphia who desired to be a candidate for election to the seat on the Commonwealth Court of Pennsylvania vacated by the resignation of Judge Robert Williams on February 6, 1985. On that date petitioner initiated a declaratory judgment action in the Commonwealth Court requesting the court to declare that the vacant seat be filled at the 1985 municipal election and order respondent, the Secretary of the Commonwealth, to send to the county board of each county a written notice designating the vacant seat as one for which candidates were to be nominated at the May 21, 1985 primary election.[1] On February 8, 1985, a petition to assume plenary jurisdiction was filed with this Court. The petition was granted on March 1, 1985 and argument was heard on March 7, 1985.[2] On March 12, 1985, we issued an order denying petitioner's requested relief.

1. Pursuant to the Act of June 3, 1937, P.L. 1333, art. IX, § 905, *as amended,* 25 P.S. § 2865, on or before the thirteenth Tuesday preceding each primary, the Secretary of the Commonwealth is charged with the duty of sending to the county board of each county a written notice designating all the offices for which candidates are to be nominated at the ensuing primary. In this case, the Secretary was unwilling to certify the vacant seat for the 1985 municipal election because the vacancy did not occur more than ten months before the municipal election. He maintains that an election for the seat is not authorized by the terms of the Constitution since the municipal election on November 5, 1985 will not take place more than ten months after the vacancy arose.

2. We assumed plenary jurisdiction over this matter pursuant to the Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 726.

The question before us is how and when that vacancy may be filled. The Constitution plainly gives the answer. Section 13 of Article V of the Pennsylvania Constitution provides:

§ 13. Election of justices, judges and justices of the peace; vacancies

(a) Justices, judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve.

(b) *A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment of the Governor.* The appointment shall be with the advice and consent of two-thirds of the members elected to the Senate, except in the case of justices of the peace which shall be by a majority. *The person so appointed shall serve for a term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs* or for the remainder of the unexpired term whichever is less, except in the case of persons selected as additional judges to the Superior Court, where the General Assembly may stagger and fix the length of the initial terms of such additional judges by reference to any of the first, second and third municipal elections more than ten months after the additional judges are selected. The manner by which any additional judges are selected shall be provided by this section for the filling of vacancies in judicial offices. (Emphasis added).

■ Reduced to its simplest terms, an election is required to fill a vacancy at the next municipal election that occurs more than ten months after the vacancy arises. In the case *sub judice,* the vacancy occurred on February 6, 1985. The 1985 municipal election is scheduled for November 5, 1985, approximately nine months subsequent. The mathematics are clear enough. The petitioner, however, contends that

while the numbers are incontestable they do not mean what they seem to mean.

The petitioner notes that the effect of the date of vacancy has in our decisions varied, in different cases, and that because it has varied, he has a case amenable to variation from the ten month requirement. We do not agree.

Relying on *Barbieri v. Shapp*, 476 Pa. 513, 383 A.2d 218 (1978) and *Berardocco v. Colden*, 469 Pa. 452, 366 A.2d 574 (1976), petitioner would have us ignore the ten month requirement of the Constitution and hold that where the vacancy arises before the commencement of the electoral process, the vacancy should be filled through election. He contends that the seat should be put up for election since Judge Williams resigned before the initiation of the electoral process which, according to petitioner, began on February 19, 1985, the date on which respondent sent written notice to the county boards of elections designating offices for which candidates were to be nominated at the municipal primary. *See* fn. 1 *supra.*

Petitioner contends that in fact such is the rule plainly implied in the case of *Barbieri, supra,* where we allowed a vacancy which occurred less than ten months before the municipal election to nonetheless be filled by election. We did so, not to avoid the ten month requirement, but to fulfill its purpose. The ten month requirement is designed to give notice that a vacancy exists and that it will be filled in the ensuing municipal election. The purpose of the notice is that all know beforehand that an election to fill a vacancy will occur; and that election officials, party officials, potential candidates, and the voting public can prepare to present and hear in a full measure of time the candidates for election.

In *Barbieri, supra,* we held that when a vacancy has occurred because a judge reaches mandatory retirement age less than ten months before an election, or between election day and inauguration day, that this situation constitutes an exception to the constitutional mandate. In that

case, the vacancy occurred not because the incumbent resigned, but because the incumbent could not stand for election. The incumbent could not run because he was mandated to retire. The date of his mandatory retirement was known from the day he was born, seventy years before. Thus, we deemed the certain knowledge that a vacancy was mandated, a fact known and knowable to all well before any type of electoral process commenced, that on a given, ineluctable date a vacancy would occur, was sufficient to satisfy the need to know beforehand that a vacancy would exist; and we found that such certainty satisfied the intention and purpose of the ten month requirement. One may choose his resignation for a host of reasons, or be compelled by unanticipated causes, all of which can take the electoral process by surprise and swallow that reasonable period given the public to consider matters of such importance. On the other hand, one's seventieth birthday, however seeming remote, can be calculated by waning moons and rising suns almost quicker than it seems to come.

In *Berardocco, supra,* a vacancy occurred in the office of district justice, approximately eight months before the municipal election. The vacancy resulted from the decision of the incumbent, Frank T. Hazel, to resign prior to the scheduled expiration of his six year term. At the time of his resignation the district justice seat was already designated by the Secretary as an office for which candidates were to be nominated, since by operation of law the incumbent was in his last year of office. Regardless of the Secretary's designation the Governor appointed Richard Colden, Jr. to fill the vacancy. Subsequently, Albert J. Berardocco was duly elected, yet the Governor refused to issue him a commission. Mr. Colden remained in office, asserting that his term of office lasted until January, 1978, which was the "January following the next municipal election more than ten months after the vacancy occur[red]." Mr. Berardocco commenced a *quo warranto* action in this Court, and we held that the ten month provision of Section 13(b) does not operate when the normal electoral process of

judicial selection "has been triggered by the anticipated expiration of the incumbent's term." *Id.*, 469 Pa. at 457, 366 A.2d at 576.

■ *Barbieri* and *Berardocco* are clearly distinguishable from the present case. Here there was not an anticipated expiration of Judge Williams' term prior to the ten month period. Judge Williams did not reach mandatory retirement age, and his term of office was not due to expire until 1990. The basis for the exception to the "ten month" provision carved out in the above cases, i.e., an anticipated expiration of an incumbent's term, known to the public prior to ten months preceding the municipal election, does not exist in this case.

■ Petitioner argues that despite this distinction, the instant case is consistent in principle with *Barbieri* and *Berardocco,* in that the certainty of the vacancy arose before the commencement of the electoral process. However, petitioner has mistakenly assumed that the electoral process commences on the date on which the Secretary of the Commonwealth is scheduled to send notice of the offices for which candidates are to be nominated. Although no specific commencement date can be assigned, the framers of Section 13 determined that the electoral process requires at a minimum a ten-month period to allow candidates and election officials ample time to prepare for both primary and municipal elections. *Berardocco, supra,* 469 Pa. at 457, 366 A.2d at 576. When, as here, an unanticipated vacancy arises we are not at liberty to deviate from that determination however small the intervening time. Otherwise the ten month provision of Section 13(b) is deprived of its purpose.

Accordingly, on March 12, 1985, we issued the following:

## ORDER

PER CURIAM.

AND NOW this 12th day of March, 1985, Petitioner's requested relief is denied.

ZAPPALA, J., files a dissenting opinion in which LARSEN, J., joins.

NIX, C.J., did not participate in the consideration or decision of this matter.

ZAPPALA, Justice, dissenting.

The constitutional preference for election over the appointment of judges is disregarded by the holding of the majority opinion. Although Section 13(b) was not intended to frustrate the electoral process, the electoral process has been defeated so today. *Cavanaugh v. Davis*, 497 Pa. 351, 440 A.2d 1380 (1982); *Leedom v. Thomas*, 473 Pa. 193, 373 A.2d 1329 (1977).

In *Berardocco v. Colden*, 469 Pa. 452, 366 A.2d 574 (1976), this Court unanimously stated,

whenever possible judicial officers shall be elected by a complete electoral process. The appointive process of section 13(b) was intended to fill a judicial vacancy only until the office could again be filled by a popularly elected officer. *The "ten month" provision was designed simply to insure that the electoral process would be complete with a regularly conducted primary election, as well as a municipal election.*

469 Pa. at 459, 366 A.2d at 577 (1976) (footnote omitted) (emphasis added).

The majority finds that the basis for the exception to the ten month provision set out in *Berardocco* and in *Barbieri v. Shapp*, 476 Pa. 513, 383 A.2d 218 (1978), does not exist in the instant case. As clearly set forth in the quoted portion of the *Berardocco* analysis of Section 13(b), however, the crucial element underlying this Court's reasoning was the presence of sufficient time within which a regularly conducted primary and municipal election could be held. The opportunity for the complete electoral process was the basis for this Court's exception to the ten month provision.

Such an opportunity clearly existed in the present case. Pursuant to the Election Code, on the thirteenth Tuesday preceding the primary, the Secretary of the Commonwealth

is required to send to the county board of each county a written notice designating the offices for which candidates are to be nominated, including judges to be elected at the succeeding November election. 25 P.S. § 2865. The primary was scheduled for May 21, 1985. The thirteenth Tuesday preceding the primary fell on February 19, 1985. Significantly, the thirteenth Tuesday preceding the primary is also the first date at which nominating petitions may be circulated. 25 P.S. § 2868.

The resignation of Judge Robert W. Williams occurred on February 6, 1985, prior to the critical date of February 19th—the thirteenth Tuesday preceding the primary. It is evident that more than sufficient time existed within which "election officials, party officials, potential candidates and the voting public" could prepare for the election, for even nominating petitions could not have been circulated until after the date of Judge Williams' resignation. Yet, the majority finds otherwise.

The electorate is ill-served by the majority's holding today that the very provision which was intended to insure it of a complete electoral process must deprive it of an opportunity to choose its public officer at all in the upcoming election.

LARSEN, J., joins in this dissenting opinion.